IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-00291-03-CR-W-BCW |
| | ) | |
| T. CAMERON JONES, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on the Motion to Dismiss All Counts of the Indictment for Insufficiency as to T. Cameron Jones (doc #240).   For the reasons set forth below, it is recommended that defendant Jones' Motion to Dismiss be denied.

I.  INTRODUCTION

On August 13, 2013, defendant T. Cameron Jones, along with seventeen others, was charged by indictment.   On September 10, 2013, the government was granted leave to amend the indictment.   Defendant Jones is charged in forty-one counts of this forty-four count indictment—Count 1 (conspiracy to commit wire fraud and contraband cigarette trafficking); Counts 2 through 15 (trafficking in contraband cigarettes); and Counts 16 through 36 and 39 through 43 (wire fraud).

II.  DISCUSSION

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation …."   This Constitutional requirement is implemented by Rule 7(c)(1) of the Federal Rules of Criminal

Procedure which specifies that "[t]he indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged …."   An indictment is sufficient if it:   (1) contains the essential elements of the offenses charged; (2) fairly informs the defendant of the charges against which he must defend; and (3) enables the defendant to plead an acquittal or conviction in bar of future prosecution for the same offenses.   See Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998); United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993), cert. denied, 513 U.S. 831 (1994).   The sufficiency of a criminal indictment is determined from its face.   There is no summary judgment procedure in criminal cases nor do the rules provide for a pre-trial determination of the sufficiency of the evidence.   See United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995); United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992).   Indictments are normally sufficient unless no reasonable construction can be said to charge the offense.   See O'Hagan, 139 F.3d at 651; United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993).

As set forth above, defendant Jones is charged in forty-one counts of the forty-four count indictment.   The indictment provides in part:

## COUNT ONE

From on or about July 2010, and continuing until on or about January 26, 2012, said dates being approximate, in the Western District of Missouri and elsewhere, [all defendants] did knowingly and intentionally combine, conspire, confederate and agree with others both known and unknown, to commit offenses against the United States, that is, wire fraud, in violation of Title 18, United States Code, Section 1343; contraband cigarette trafficking, in violation of Title 18, United States Code, Sections 2341 through 2346.

## Background and General Allegations

\* \* \*

4.      During all times relevant to this conspiracy, T. CAMERON JONES

2

owned and operated Manufacturer's Production Exchange (MPX) in Quilcene, Washington.

\* \* \*

14.     During the course of this conspiracy, T. CAMERON JONES received approximately $154,000 for his "brokerage fees."

\* \* \*

16.     New York State, through the Department of Taxation and Finance, pre-collects an excise tax of $4.35 per pack of cigarettes from wholesalers for sales to Indian nations and tribes, as a result of Chapter 134 of the New York State Laws of 2010.   This taxing scheme was upheld by the United States Court of Appeals for the Second Circuit in *Oneida Nation of New York v. Cuomo*, 645 F.3d 154 (2d Cir. 2011)(hereinafter the *Oneida* decision).   The New York State taxing scheme for cigarettes was enforced shortly after the Oneida decision was issued.   Thereafter, all cigarettes being brought into the State of New York were required to prepay an excise tax of $4.35 per pack of cigarettes ($43.50 per carton).

17.     Federal and New York State law requires that tax stamps be affixed to cigarette packages – prior to their sale to consumers – reflecting that the required state taxes have been paid.   Cigarette packages without the appropriate stamps are considered to be "unstamped" and a quantity in excess of $10,000 unstamped cigarettes are "contraband cigarettes" as defined in 18 U.S.C. § 2341(2). …

\* \* \*

**Manner and Means**

23.     It was part of the conspiracy that UCC 1 [unindicted co-conspirator 1], CRAIG SHEFFLER, and TADAIYON would make regular purchases in Kansas City, Missouri, of contraband cigarettes from undercover agents (UCAs) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in exchange for U.S. currency.

24.     It was part of the conspiracy that T. CAMERON JONES and DAVID BISHOP would coordinate the orders between UCC 1, CRAIG SHEFFLER and TADAIYON.   TADAIYON and GERALD E. BARBER would coordinate the cigarette orders from the vendors in New York State – including WILLIAM F. PARRY, TARA SUNDOWN, AJ's and HCID in Nebraska.

\* \* \*

30.     At no point during the conspiracy timeframe was the New York

3

State excise tax paid on these cigarette transactions. From the post-*Oneida* date, June, 2011, through the end of the conspiracy, the total state excise tax lost to New York State was approximately $8,148,420.

## Overt Acts

31.    In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Western District of Missouri and elsewhere:

\* \* \*

(k)    On August 4, 2011, CRAIG SHEFFLER paid the ATF undercover agent $541,725 in cash for 132 cases (7,920 cartons) of Marlboro cigarettes, and other cigarettes. The following acts were taken by the co-conspirators in this transaction:

(1)    On July 20, 2011, DAVID BISHOP sent an e-mail to JONES and CRIAG SHEFFLER with an order of 264 cases of contraband cigarettes;

(2)    On August 2, 2011, CRAIG SHEFFLER e-mailed JONES and DAVID BISHOP an invoice to BNC for 7,920 cartons of Marlboro cigarettes in the amount of $249,480;

\* \* \*

(l)    On August 18, 2011, SHEFFLER paid the ATF undercover agent $551,220 cash for 132 cases (7,920 cartons) of Marlboro cigarettes and other cigarettes. The following acts were taken by the co-conspirators in this transaction:

(1)    On August 8, 2011, DAVID BISHOP sent an e-mail to JONES and CRAIG SHEFFLER for the next order to be delivered on August 18, 2011;

(2)    On August 16, 2011, CRAIG SHEFFLER sent by e-mail to JONES and DAVID BISHOP an invoice for 7,920 cartons of untaxed Marlboro cigarettes in the amount of $257,400;

\* \* \*

(m)    On September 15, 2011, CRAIG SHEFFLER purchased 15,480 cartons (258 cases) of untaxed Marlboro cigarettes and 5,760 (96

4

cases) cartons of untaxed Newport cigarettes from the ATF undercover agents for $613,080. CRAIG SHEFFLER paid $490,000 of this amount in cash. The following acts were taken by the co-conspirators in this transaction:

      (1)    On September 13, 2011, CRAIG SHEFFLER sent an e-mail to JONES and DAVID BISHOP concerning the amount of premium cigarettes available;

      (2)    On September 14, 2011, DAVID BISHOP sent an e-mail to CRAIG SHEFFLER and directed CRAIG SHEFFLER to invoice BNC for the cigarettes and to pay JONES and DAVID BISHOP $.50 a carton for the Marlboro cigarettes and $1.00 per carton for the Newports;

      (3)    On September 14, 2011, CRAIG SHEFFLER sent an e-mail to DAVID BISHOP and JONES an invoice for BNC for 5,400 cartons (90 cases) of Marlboro cigarettes and 2,880 cartons (48 cases) of Newport cigarettes;

\* \* \*

      (n)    On September 29, 2011, CRAIG SHEFFLER purchased 258 cases of untaxed Marlboro cigarettes and 96 cases of untaxed Newport cigarettes from the ATF undercover agents for $580,131 and a check for $33,000. … The following acts were taken by the co-conspirators in this transaction:

      (1)    On September 27, 2011, CRAIG SHEFFLER sent an e-mail to JONES and DAVID BISHOP with an invoice for 11,040 cartons (184 cases) of Marlboro cigarettes and 3,360 cartons (56 cases) of Newport cigarettes in the amount of $474,720;

\* \* \*

      (o)    October 13, 2011, SHEFFLER paid the ATF undercover agent $638,240 in currency and a $10,000 check for 354 cases of contraband cigarettes. The following acts were taken by the co-conspirators in this transaction:

      (1)    On October 11, 2011, CRAIG SHEFFLER sent an e-mail to JONES and DAVID BISHOP an invoice to BNC for 13,860 cartons of Marlboro cigarettes and 4,320 cartons of Newport cigarettes in the amount of $601,650;

\* \* \*

(p)     On October 27, 2011, CRAIG SHEFFLER purchased 354 cases of contraband cigarettes from the ATF undercover operation in Kansas City, Missouri, in exchange for $633,250 in currency. … The following acts were taken by the co-conspirators to carry out this transaction:

     (1)     On October 25, 2011, CRAIG SHEFFLER e-mailed JONES and DAVID BISHOP an invoice for 215 cases of untaxed Marlboro cigarettes and 60 cases of untaxed Newport cigarettes;

\* \* \*

     (3)     On October 27, 2011, HOFFMANN arrived at the ATF undercover warehouse in Kansas City, Missouri, in a Penske truck.   The truck was loaded with contraband cigarettes as listed on the invoice sent to JONES and DAVID BISHOP;

\* \* \*

(r)     On November 10, 2011, CRAIG SHEFFLER purchased 354 cases of contraband cigarettes from the ATF undercover operation in Kansas City, Missouri.   CRAIG SHEFFLER paid the undercover agents $600,260 in United States currency and a $33,000 check. … The following acts were taken by the co-conspirators to carry out this transaction:

     (1)     On November 9, 2011, CRAIG SHEFFLER sent an e-mail to JONES and DAVID BISHOP with invoices for shipments of contraband cigarettes.   The first invoice was for 9,540 cartons of untaxed Marlboro cigarettes in the amount of $310,050.   The second invoice was for 4,500 cartons of "Special" (Marlboro) and 4,320 cartons of Newport cigarettes in the amount of $297,450;

\* \* \*

(s)     On November 22, 2011, CRAIG SHEFFLER purchased 352 cases of contraband cigarettes from the ATF undercover operation in Kansas City, Missouri.   CRAIG SHEFFLER did not make the payment to the ATF agents during this transaction.   CRAIG SHEFFLER outlined a breakdown of payments for the purchases of semi-trucks to be coordinated by attorney HARRY NAJIM.   CRAIG SHEFFLER agreed to give NAJIM approximately $625,000 to purchase the Peterbilt semi-trucks

for the undercover agent. CRAIG SHEFFLER stated he would pay NAJIM's law firm $9,000 and $60,000 in cash to NAJIM. The following acts were taken by the co-conspirators to carry out this transaction:

(1) On November 21, 2011, CRAIG SHEFFLER sent an e-mail to DAVID BISHOP and JONES with two invoices from CTW to BNC. The first invoice was for 12,120 cartons of Marlboro cigarettes and 5,760 cartons of Newport cigarettes. The second invoice was for 3,240 cartons of Marlboro cigarettes for MOUSA JUMA;

(2) On November 21, 2011, CRAIG SHEFFLER, JONES and DAVID BISHOP had a three-way telephone conversation in which DAVID BISHOP told CRAIG SHEFFLER there would be a new driver because Customs refused entry to MARK BISHOP;

\* \* \*

(t) On November 29, 2011, CRAIG SHEFFLER purchased 15,480 cartons of untaxed Marlboro cigarettes and 5,760 cartons of untaxed Newport cigarettes at a cost of $633,240. CRAIG SHEFFLER paid $685,600 in cash for these cigarettes and other cigarettes. … The following acts were taken by the co-conspirators to carry out this transaction:

\* \* \*

(2) On December 1, 2011, TADAIYON sent an e-mail to CRAIG SHEFFLER, JONES and DAVID BISHOP to say that he had to go to U-Haul to get a truck since Budget rental car did not honor the reservation and Penske was out;

\* \* \*

(u) On December 9, 2011, CRAIG SHEFFLER met the agents at the undercover ATF warehouse and purchased 558 cases of untaxed cigarettes for $600,000 in currency. SHEFFLER left a balance owed of $246,950. The following acts were taken by the co-conspirators to carry out this transaction:

(1) On December 7, 2011, CRAIG SHEFFLER sent an e-mail to JONES, DAVID BISHOP and TADAIYON concerning the quantity of cigarettes available;

7

(2)    On December 8, 2011, CRAIG SHEFFLER, JONES and DAVID BISHOP had a three-way telephone conversation in which they discussed the ongoing trafficking in contraband cigarettes;

(3)    On December 13, 2011, CRAIG SHEFFLER sent an e-mail to JONES, DAVID BISHOP and TADAIYON with an invoice to BNC for 13,260 cartons of Marlboro cigarettes and 4,740 cartons of Newport cigarettes, in the amount of $598,800;

\* \* \*

(w)    On January 19, 2012, CRAIG SHEFFLER purchased 15,480 cartons of untaxed Marlboro cigarettes and 5,760 cartons of untaxed Newport cigarettes from the ATF undercover operation in Kansas City, Missouri.    CRAIG SHEFFLER paid the undercover agents $433,300 in currency for the cigarettes and agreed to pay the balance of $199,940 during the next meeting on January 23, 2012.   The following acts were taken by the co-conspirators to carry out this transaction:

\* \* \*

(2)    On January 16, 2012, SHEFFLER sent an e-mail to JONES, DAVID BISHOP and TADAIYON to confirm the amount of premium cigarettes available for purchase on January 19, 2012. SHEFFLER requested a down payment from TADAIYON of $200,000 - $250,000 due to the size of the order;

(3)    On January 16, 2012, SHEFFLER sent an e-mail to JONES, DAVID BISHOP and TADAIYON with an invoice to BNC for 14,880 cartons of untaxed Marlboro cigarettes and 5,400 cartons of untaxed Newport cigarettes, in the amount of $665,160;

\* \* \*

(5)    On January 18, 2012, TADAIYON sent an e-mail to JONES, DAVID BISHOP and CRAIG SHEFFLER with a copy of a wire confirmation in the amount of $200,000 as partial payment for the invoice;

\* \* \*

(x)    On January 26, 2012, CRAIG SHEFFLER purchased 15,480 cartons of Marlboro cigarettes and 8,640 cartons of Newport cigarettes from the ATF undercover operation in Kansas City, Missouri.

CRAIG SHEFFLER paid the undercover agents $740,000 in cash with a balance left of $185,400. The following acts were taken by the co-conspirators in carrying out this transaction:

(1)     On January 24, 2012, CRAIG SHEFFLER e-mailed JONES, DAVID BISHOP and TADAIYON an invoice to BNC for 15,480 cartons of Marlboro cigarettes and 5,760 cartons of Newport cigarettes in the amount of $696,960. CRAIG SHEFFLER requested a down payment from TADAIYON of $300,000 due to the size of the order;

(2)     On January 25, 2012, TADAIYON e-mailed JONES, DAVID BISHOP and CRAIG SHEFFLER a copy of a wire confirmation in the amount of $250,000 as partial payment for the invoice;

\* \* \*

(y)     None of the co-conspirators reported the sales of the unstamped cigarettes listed above to New York State, as required by law.

(z)     None of the co-conspirators obtained prior approval from the New York Department of Taxation and Finance for the transportation of the above-listed cigarettes into New York State, as required by law.

(aa)     None of the co-conspirators prepaid the New York State excise tax on the unstamped cigarettes listed above, as required by law.

All in violation of Title 18, United States Code, Section 371.

## CONTRABAND CIGARETTE TRAFFICKING ACT

## COUNT TWO

On or about August 4, 2011, in the Western District Missouri and elsewhere, the defendants GHOLAMREZA "REZA" TADAIYON, MARK BISHOP, and WILLIAM F. PARRY, aided and abetted by CRIAG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, and GERALD E. BARBER, did knowingly ship, transport, receive, possess, sell, distribute, and purchase in excess of 10,000 contraband cigarettes, as defined in Title 18, United States Code, Section 2341:

9

| Count | Date | Defendants/ Drivers | Cartons of Cigarettes | Delivered from Kansas City, Missouri to: |
|-------|------|---------------------|----------------------|------------------------------------------|
| 2 | [8/4/11] | MARK BISHOP, TADAIYON, & PARRY | 7,920 | Oklahoma & New York |

All in violation of Title 18, United States Code, Sections 2342(a), 2344(a) and 2.

* * *[1]

### WIRE FRAUD

1.     The allegations contained in Count One are hereby realleged and incorporated by reference as though set forth in full.

2.     On or about the dates set forth below, and [sic] the Western District Missouri, the defendants named below, did knowingly, intentionally, and unlawfully devise, execute and attempt to execute a scheme and artifice to defraud the State of New York, and to obtain money by means of false and fraudulent pretenses, representations, or promises, did transmit or cause to be transmitted in interstate or foreign commerce cigarette orders and other communications, by means of … a wire communication, certain signs, signals, pictures or sounds, for the purpose of executing a scheme or artifice:

| Count | Date | Wire transmission from and to: | Defendants |
|-------|------|-------------------------------|------------|
| 16 | 07/20/11 | E-mail from David Bishop in Canada to JONES in Washington and SHEFFLER in Missouri | CRAIG SHEFFLER, DAVID BISHOP, JONES, TADAIYON, and BARBER |

* * *[2]

All in violation of Title 18, United States Code, Sections 1343 and 2.

---

[1]Counts 3 through 15 contain the same format and general charges.   While the charged offenses are unique in the dates of the alleged transactions, amounts of contraband cigarettes, delivery destinations and defendants involved, defendant Jones is charged in each of these counts.
[2]Counts 17 through Counts 36 and 39 through 43 contain the same format and general charges. While the charged offenses are unique in the dates of the wire transmissions and defendants involved, defendant Jones is charged in each of these counts.

(Doc #62)

        1.      <u>Counts 2 Through 15</u>

Defendant Jones contends that Counts 2 through 15, the charges brought against defendant

Jones for trafficking in contraband cigarettes, must be dismissed because:

        8.      Nowhere in the indictment is it alleged that Mr. Jones knowingly shipped, transported, received, possessed, sold, distributed or purchased contraband cigarettes as required to state a violation of the CCTA.

        9.      In fact, Mr. Jones never had possession of the alleged contraband cigarettes.

*  *  *

       17.      At best, the Indictment alleges that Mr. Jones was coordinating orders between David Bishop and Craig Sheffler.   That activity is not a violation of either state or federal law.

       18      Even if Mr. Jones is evaluated as an aider and abetter, the Indictment is deficient as there is no allegation that Mr. Jones knew the orders he is alleged to have coordinated were destined for the State of New York or that the purchasers of the alleged contraband cigarettes would not comply with appropriate New York tax laws.

(Motion to Dismiss All Counts of the Indictment for Insufficiency as to T. Cameron Jones (doc

#240) at 3-4)

Counts 2 through 15 charge a violation of 18 U.S.C. § 2342(a), the CCTA, and 18 U.S.C. §

2.[3]  18 U.S.C. § 2342(a) states that "[i]t shall be unlawful for any person knowingly to ship,

transport, receive, possess, sell, distribute, or purchase contraband cigarettes …."  In <u>City of New</u>

<u>York v. Golden Feather Smoke Shop, Inc.</u>, No. 08-CV-3966 (CBA), 2011 WL 6945758, at *3

(E.D.N.Y. Dec. 30, 2011), the court set forth the elements for a CCTA violation as follows:

---

[3]Section 2(a) provides:  "Whoever commits an offense against the United States or aids [or] abets … its commission, is punishable as a principal."

… that a party (1) knowingly "ship, transport, receive, possess, sell, distribute or purchase" (2) more than 10,000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or local cigarette tax law requires the cigarettes to bear such stamps.

"An indictment which 'tracks the statutory language' is ordinarily sufficient." United States v. Tebeau, 713 F.3d 955, 962 (8th Cir. 2013)(quoting United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008)).

Count 2 of the indictment (which contains the same basic language as Counts 3 through 15) charges:

> On or about August 4, 2011, in the Western District Missouri and elsewhere, the defendants GHOLAMREZA "REZA" TADAIYON, MARK BISHOP, and WILLIAM F. PARRY, aided and abetted by CRIAG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, and GERALD E. BARBER, did knowingly ship, transport, receive, possess, sell, distribute, and purchase in excess of 10,000 contraband cigarettes, as defined in Title 18, United States Code, Section 2341: ... All in violation of Title 18, United States Code, Sections 2342(a), 2344(a) and 2.

Counts 2 through 15 track the appropriate statutory language. Whether the government will introduce sufficient evidence to prove these allegations cannot be resolved prior to the government's presentation of its case to the jury. The indictment is sufficient.

### 2. Counts 16 Through 36 and 39 Through 43

Counts 16 through 36 and 39 through 43, the charges brought against defendant Jones for wire fraud, charge a violation of 18 U.S.C. § 1343. 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire … communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned … or both. …

In United States v. Rice, 699 F.3d 1043 (8th Cir. 2012), the court set forth the elements for a wire

fraud violation as follows:

> The government must prove each essential element of wire fraud to establish the
> defendant's guilt: (1) intent to defraud, (2) participation in a scheme to defraud,
> and (3) the use of a wire in furtherance of the fraudulent scheme.

Id. at 1047.

Defendant Jones contends that Counts 16 through 36 and 39 through 43 must be

dismissed because:

> 24.    There is no allegation in the Indictment that Mr. Jones had
> knowledge of or joined a scheme to defraud the state of New York of tax revenue.
>
> 25.    There is no allegation in the Indictment that Mr. Jones had a
> specific intent to defraud the state of New York.
>
> 26.    Nowhere does the Indictment allege that Mr. Jones knew the
> cigarette orders he was coordinating were destined from New York.
>
> 27    At the time Mr. Jones allegedly coordinated the orders, the
> cigarettes were not in the state of New York.   Therefore, no New York taxes
> were due or owing on the cigarettes at the time of Mr. Jones' alleged involvement.

(Motion to Dismiss All Counts of the Indictment for Insufficiency as to T. Cameron Jones (doc

#240) at 5)

Again, "[a]n indictment which 'tracks the statutory language' is ordinarily sufficient."

United States v. Tebeau, 713 F.3d 955, 962 (8th Cir. 2013)(quoting United States v. Sewell, 513

F.3d 820, 821 (8th Cir. 2008)).   Counts 16 through 36 and 39 through 43 track the statutory

language of 18 U.S.C. § 1343.   These counts charge:

> … the defendants … did knowingly, intentionally, and unlawfully devise, execute
> and attempt to execute a scheme and artifice to defraud the State of New York, and
> to obtain money by means of false and fraudulent pretenses, representations, or
> promises, did transmit or cause to be transmitted in interstate or foreign commerce
> cigarette orders and other communications, by means of … a wire communication,
> certain signs, signals, pictures or sounds, for the purpose of executing a scheme or
> artifice ….

(Doc #62 at 43)

Contrary to defendant's argument, each of these counts states that defendant Jones knowingly, intentionally and unlawfully executed and attempted to execute a scheme to defraud the State of New York. Counts 16 through 36 and 39 through 43 track the appropriate statutory language. Whether the government will introduce sufficient evidence to prove these allegations cannot be resolved prior to the government's presentation of its case to the jury. The indictment is sufficient.

### 3. Count 1

Finally, defendant Jones argues: "[a]s each and every substantive count of the Indictment is insufficient with regard to Mr. Jones, it follows that the conspiracy count (Count 1) must be dismissed with regard to Mr. Jones." (Motion to Dismiss All Counts of the Indictment for Insufficiency as to T. Cameron Jones (doc #240) at 5)

The Court notes that the alleged conspiracy is a crime separate from any of the alleged substantive charges brought against defendant Jones. In any event, contrary to defendant's argument, the Court finds each of the substantive counts brought against defendant Jones, as well as the conspiracy count, to be sufficient.

### III. CONCLUSION

For the foregoing reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying the Motion to Dismiss All Counts of the Indictment for Insufficiency as to T. Cameron Jones (doc #240).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this

14

Report and Recommendation within which to file and serve objections to same.   A failure to file

and serve timely objections shall bar an attack on appeal of the factual findings in this Report and

Recommendation which are accepted or adopted by the district judge, except on the grounds of

plain error or manifest injustice.


_/s/ Sarah W. Hays_
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE